## Thompson *vs* Robertson,

APPEAL FROM THE NELSON CIRCUIT.

*Vendor and vendee. Rescission. Conveyances. Surplus land.*

JUDGE SIMPSON delivered the opinion of the Court.

ROBERTSON sold to Martin and Thompson a tract of land at sixteen dollars per acre, and executed a writing obligatory, stipulating for a conveyance of a good title to the purchasers, upon the payment of the purchase money by them, or sooner if they required it. The land sold is described in the writing, as the tract of land upon which the vendor then resided, containing one hundred and seventy three acres, more or less, and binding on the Beach Fork.

Martin having sold his interest in the land to Thompson, his co-purchaser, the latter brought this suit in chancery, alleging a deficiency in the quantity of the land sold, and an inability upon the part of Robertson, the vendor, to make a good and perfect title, and praying for an abatement of the price, on account of the deficiency, and a specific execution of the contract, if a good title could be made by his vendor, but if not, that a rescission of the contract might be decreed.

Robertson resisted a rescission of the contract, contended that there was more than one hundred and seventy three acres of the land sold, and further, that he was entitled to sixteen dollars per acre for the excess. He also made an exhibition of his title papers, insisted that his title was good, and claimed an enforcement of the contract.

The Court below decreed a specific execution of the contract, and the payment by the purchasers of the price agreed on, for one hundred and seventy six acres.

In revising that decree, two questions are presented for consideration. First, the quantity of land embra-

*June 9.*

The object of the bill of Thompson.

The answer of Robertson.

ced by the purchase. Second, the sufficiency of the vendor's title.

The first question depends upon the construction of the writing evidencing the contract. It appears that the tract of land upon which Robertson resided at the time of the sale, and which was actually bounded by the Beach Fork, contained only one hundred and sixty six acres and one half. But Robertson also owned two small islands in the Beach Fork, one of which contains four acres, and the other five and one half acres. These two small islands were in the possession of Robertson at the time of the sale; had been previously patented to him by the Commonwealth of Kentucky, and were undoubtedly, as the proof shows, included in the contract between the parties. Indeed the quantity specified in the contract, proves that such was the fact. At that time the vendor owned two shares of the tract of land which had belonged to his father, John Robertson, deceased. According to the division which had been made among the heirs, one share contained eighty four acres, and the other share eighty acres, making one hundred and sixty four acres. The patents for the two small islands called for nine acres, one being for five, and the other for four acres, which increased the quantity to one hundred and seventy three acres, being the exact number of acres stated in the written contract to have been sold by Robertson.

But unless the writing, by a reasonable and fair construction of it, embraces the two islands, as part of the land sold by Robertson, and purchased by Martin and Thompson, the purchasers cannot be compelled to take them. In answer to the cross bill of Robertson, to enforce the contract specifically, they deny that the islands constitute a part of the land purchased by them. As the contract remains executory, and no conveyance has been accepted by the purchaser, embracing this disputed land, the contract is not enforcible under the statute of frauds, at the instance of either party, when opposed by the other, only so far as it is evidenced by the written instrument: *Murray* vs *Pate*, (6 *Dana*, 335.)

A sale of a tract of land described as the tract on which the vendor resided, containing 173 acres held to embrace two islands in the Beach Fork, containing together 8 acres which the vendor had used and held, and without which there was less by about 5 acres than the quantity called on in the bond.

To permit the introduction of parol evidence, to enlarge or add to a written contract, would be in direct violation of a well settled rule of law; and as there is no allegation that the writing in this case was executed by mistake, so as not to contain the real contract of the parties, the question whether these islands constitute a part of the land sold, depends upon the construction of the written contract.

The tract of land upon which the vendor resided at the time of the sale, is bounded only upon one end by the Beach Fork. It is described in the writing, as binding upon the Beach Fork, but the extent that it binds upon that water course is not stated. Its identity has to be determined by the quantity specified, and its description as the tract of land upon which the vendor resided when the contract was made. As we have already seen, the quantity named includes the islands, and cannot be obtained without them. They in effect constituted a part of the tract of land upon which the vendor resided, although they are separated from the main body of the land by the water of the Beach Fork. If the boundaries of the land sold, had been stated at large in the written contract, a more accurate description of the islands, as well as the residue of the tract of land, would have been expected. But as the description is very general, and as the quantity stated to have been sold, in some degree gives identity to the land embraced by the contract, and proves that the islands constituted a part of the land sold, and as the vendor at the time of the sale, had the islands in his possession, and treated and considered them as part of his farm, we think they must be regarded as forming part of the land sold, according to the terms of the written contract, and as sufficiently identified by it.

The validity of the vendor's title, is the second question to be considered. His title to all the land sold seems to be unquestionable, except to that part of it, being eighty acres thereof, which in the division of the land of John Robertson, deceased, was allotted to Wm. N. Robertson. His title to this eighty acres depends on the sufficiency of the deed to him, made by Wm. N.

Robertson and wife, during the pendency of the suit, for although an attempt was made to deduce title to it through others, no regular derivation of title is exhibited in the record through such persons.

The deed from Wm. N. Robertson and wife, was subscribed and acknowledged before two Justices of the the Peace in Daviess county, and certified by them for record, to the Clerk of the Nelson County Court, in which county the land is situated. We consider the form of the certificate sufficient. It shows a privy examination of the *feme*, and a voluntary execution of the deed, and relinquishment of her dower. The only objection to the certificate of any weight, is based upon the fact, that the Justices of the Peace did not attach a seal or scroll to their signature.

The act of 1796, under which this deed was acknowledged, requires the certificate by the Justices of the Peace to be made out under their hands and seals. The act of 1792, only requires the certificate of the Justices to be made under their hands. But the deed thus certified, must be subscribed by the grantors in the presence of the justices, and recorded in the county where the husband and wife reside. This deed was not so recorded, and the sufficiency of the authentication must be tested by the other acts upon the subject.

The act of 1792 required Justices of the Peace certifying deeds acknowledged before them under the hands, and that they were subscribed in their presence. That of 1796 required them to certify under their hands and seals. But the act of 1842-3, dispenses with the necessity of the seal.

Unless the act of 1843, (*Sess. Acts*, 42-3, 11,) has dispensed with a seal or scroll to a certificate of this kind, the certificate to this deed must be deemed invalid for want of this requisite. The act declares that every instrument of writing thereafter executed, shall be as effectual, and have the same dignity in law, without a seal or scroll, as with one; but the act does not alter the law requiring the State or County seal, or the seal of corporations, to certain instruments, as theretofore. The exceptions in the act do not apply to a certificate of the description under consideration; and as the act in its language and terms, is sufficiently comprehensive to embrace it, and the object of the Legislature in its enactment, was obviously to dispense with a seal or scroll where it was merely formal, and therefore unnecessary, no good reason is perceived why it should not

embrace a certificate of this kind. We therefore deem the certificate sufficient, under this act, without a seal, the deed having been executed since its passage, and regard the title of the vendor to this part of the land as good and valid.

The evidence abundantly establishes the fact, that the State bonds were received by Cox at their real value, and not at their nominal amount. The credit, therefore, allowed by the Court on this account, was as much as the purchasers had a right to demand.

As the sale was by the acre, the Court was right in requiring the purchasers to pay for the three acres of land, which was ascertained upon a survey having been made, to have been included in the sale, beyond the quantity estimated to have been sold when the contract was made; and as the decree directs a deed to be made as soon as the balance of the purchase money should be paid, Thompson has no right to complain, that a deed of conveyance was decreed to him upon that condition only.

Robertson was decreed to pay the costs of the suit. He complains of this part of the decree by cross errors. But as his title to the land sold was incomplete when the complainant's suit was instituted, and perfected during its progress, the decree in this particular was proper.

Wherefore, said decree is affirmed upon both the original and cross errors.

Where a sale was by the acre, the purchaser filed his bill for title, if to be had, or so far as vendor could show title, and pay for any deficit—he made title to the quantity sold and three acres more—Held that it was proper on the cross bill of defendant to decree payment therefor.